REQUESTED BY: Dear Senator:
You inform us that pursuant to a vote at the last general election, the composition of the Dakota County Board will be increased from three to five members; and you have requested our opinion as to what procedure should be followed in effecting the change especially with reference to redistricting and the selection of the two additional board members. In your request letter you express an interest in offering legislation `to correct one or two of the vagueries that currently seem to exist.' And it certainly is the case that there may arise some problem situations for which no clear answer can be found in the statutes as they now exist.
The same general question was the subject of an earlier Attorney General's opinion, dated January 8, 1959, appearing in Report of Attorney General, 1959-1960, page 22, a copy of which is enclosed for your convenience. The statutes insofar as pertinent, are essentially the same now as they were at that time. It was recognized at the time of the former opinion that the statutes are by no means free from ambiguity and fail to make adequate provision for certain contingencies, including such as those presented by your present situation. Certainly, there is room for some respectable disagreement with our conclusions. However, our 1959 opinion has been a matter of official record now for nearly 20 years, without judicial pronouncement to the contrary and without any legislative action to obviate or modify the conclusions which we there expressed. Accordingly, we see no reason that we should depart therefrom at this time. Parenthetically, we might note that the Sarpy County election to change from three to five commissioners, which prompted our 1959 opinion, ultimately was involved in litigation reaching the Nebraska Supreme Court. See, Ludwig v. Board ofCounty Commissioners, 170 Neb. 600 (1960). However, the opinion in that decision sheds no particular light upon the question here involved, except for the proposition that the creation of five commissioner districts appears to be mandatory.
Applying the reasoning adopted in our earlier opinion, we conclude that Dakota County must be divided into five commissioner districts at the first meeting of the board following the election at which the proposition was voted upon and that vacancies in the two additional commissioner offices automatically occur at that time. We further conclude that the two additional commissioners should be appointed, without unnecessary delay, under the provisions of section 32-1040 of the statutes.
Section 32-1040 is a general statute applying to the filling of vacancies in office, where no other method is expressly provided. Vacancies in a board of county commissioners are filled by a panel consisting of the county clerk, the county attorney and the county treasurer. Pursuant to Legislative Bill 632, section 7, enacted at the 1978 Session of the Legislature, section 32-1040 was amended so as to include a provision that all vacancies shall be filled within sixty (60) days, unless otherwise provided by law or unless good cause be shown that an undue burden would be imposed thereby.
Here again, in this connection there exists a situation for which there is no specific answer in the statutes. As a result of the past election, the composition of the vacancy selection panel as provided for in section 32-1040 will be different as of January 4, 1979, than it is at the present time. Insomuch as the sixty (60) day limitation prescribed by the 1978 amendment to section 32-1040 is simply a maximum, presumably the two county commissioner vacancy appointments might be made either before or after January 4, 1979. In the final analysis, the question resolves into one of policy judgment. It appears that the selection panel, as now constituted, has the authority to make the vacancy appointments; but, on the other hand, that panel might choose to defer the matter for action after January 4, 1979, when the newly elected take office.